UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WARD,

                         Petitioner,                       Case Number 08-13051
                                                        Honorable David M. Lawson

v.

CAROL HOWES,

                         Respondent,

_____/

## OPINION AND ORDER GRANTING PETITIONER'S MOTION TO SUPPLEMENT HABEAS PETITION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS AS SUPPLEMENTED

Petitioner Michael Ward, presently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* petition for writ of habeas corpus to contest the revocation of his parole and his continued detention on drug charges that originated over 30 years ago. He was convicted in 1981 of possession with intent to deliver more than 650 grams of cocaine, Mich. Comp. Laws § 333.7401(1)(2)(A)(I) (1978), and sentenced to a mandatory life prison term without the possibility of parole. However, he was eventually paroled after a change in the law. The petitioner refers to his habeas petition as a "hybrid petition" because he attempts to invoke the Court's jurisdiction not only under 28 U.S.C. § 2254 (habeas for prisoners in state custody), but several other statutes as well, including 28 U.S.C. §§ 2241 (general habeas power), 2201 (declaratory judgments), 2202 (same), 1651 (All Writs Act), and 42 U.S.C. § 1983 (enforcement of civil rights). In his *pro se* habeas petition, the petitioner raises twenty grounds for relief, but he states that he is not challenging his conviction or sentence. Instead, he contends that the Michigan Parole Board's procedures and its decisions have been unlawful, particularly the Parole Board's 2006 decision to revoke his parole, and Michigan Compiled Laws section 600.2963(8), which requires that a prisoner

who pursues a civil action in the Michigan courts must pay any outstanding filing fees and costs, is unconstitutional. Since filing his habeas petition on July 15, 2008, the petitioner has submitted approximately eighteen supplements in support of his petition, including a letter received on September 27, 2011.

On March 31, 2011, the petitioner filed a motion requesting that the Court permit him to supplement his habeas petition, adding additional arguments to his claim that the Parole Board lacked jurisdiction to revoke his parole. On July 28, 2011, he filed a supplemental brief that states that the Parole Board will not review his file for his parole eligibility until September 13, 2012. The Court will grant the petitioner's request to supplement his habeas petition with this new information.

However, after a careful review of the record and the numerous papers submitted, the Court concludes that the petitioner's claims are either barred from habeas review by 28 U.S.C. § 2244(b)(1), non-cognizable, or lack merit. For these reasons, the Court will deny the petitioner's habeas corpus petition.

## I.

The procedural history of this case is extensive. On April 7, 1981, the petitioner was convicted by a jury in the Washtenaw County, Michigan circuit court of possession with intent to deliver 650 grams or more of cocaine. On May 8, 1981, he was sentenced to life in prison without parole, the mandatory penalty at that time for the offense. The petitioner's conviction was affirmed on direct appeal. *People v. Ward*, 133 Mich. App. 344, 351 N.W.2d 208 (1984). The Michigan Supreme Court denied leave to appeal on September 25, 1985.

In 1998, Michigan's legislature amended its drug statutes. One amendment stated that a defendant, such as the petitioner, convicted under Michigan Compiled Laws section 333.7401,

sentenced to life without parole, and who has not been convicted of another serious crime, shall be eligible for parole after serving 17-1/2 years in prison.  Mich. Comp. Laws § 791.234(7)(c).  Because of that change, the petitioner became eligible for parole in 1999.

In 1999, an initial interview was conducted to determine the propriety of releasing the petitioner on parole.  On November 5, 1999, he received a Notice of Action that stated the Parole Board did not intend to hold a public hearing in his case.  A public hearing is necessary before a prisoner can be released on parole in Michigan.  Mich. Comp. Laws § 791.234(6)(c).  The petitioner's next interview was scheduled for February 17, 2004.

On February 19, 2003, the petitioner filed a habeas petition in this district, which was assigned to Judge Marianne O. Battani.  In that habeas petition, he challenged the Parole Board's decision, claiming that his rights to due process, equal protection, and access to the courts were violated by two letters allegedly in his file: a 1983 letter written by Judge Ross Campbell (the trial judge in his drug case) and a 1985 letter written by former prosecutor Peter Houk of Ingham County.  (Apparently, the petitioner was charged with conspiracy to deliver cocaine in Ingham County at the same time he was charged in Washtenaw County.  The record does not contain any information about the disposition of that case.)  The petitioner claimed those letters were prejudicial and retaliatory.  He argued that they were the only reason why a public hearing was not held and why he was not paroled.  He requested that the letters be removed and expunged from his record.

Judge Battani denied the petition and the petitioner's motion for reconsideration, finding that "parole eligibility [was] a question of state law" and the "Michigan courts have held that a prisoner serving a parolable life sentence has no right to a public hearing when the parole board indicates that it has no interest in taking further action."  *Ward v. Stegall*, No. 03-60042 (E.D. Mich. May 20,

2003); *Ward v. Stegall*, No. 03-60042 (E.D. Mich. June 18, 2003).  The Sixth Circuit affirmed. *Ward v. Stegall*, 93 F.App'x 805 (6th Cir. 2004).

While his habeas petition was pending before Judge Battani, the petitioner filed another habeas petition on June 16, 2003 concerning unrelated 1971 drug convictions for the possession of marijuana and LSD in Huron County, for which he was sentenced to 2-1/2 to 10 years and 2-1/2 to four years in prison, respectively.  At the time of sentencing, the trial court did not advise the petitioner of his right to appeal or his right to the appointment of appellate counsel.  The petitioner was subsequently discharged from those sentences on February 15, 1972.  This habeas case was assigned to Judge Arthur J. Tarnow.  The petitioner filed another habeas petition challenging his 1971 convictions on identical grounds on July 20, 2003, which was consolidated with the case before Judge Tarnow.  The petitioner alleged in those petitions that the presence of the 1971 drug convictions on his record harmed his chances for parole.  Judge Tarnow held that the State's failure to give the required advice at sentencing had deprived the petitioner of his Sixth Amendment right to counsel. *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 829 (E.D. Mich. 2004).  Judge Tarnow granted the petitioner a conditional writ unless the State took immediate action to afford the petitioner a new direct appeal and provide counsel.  The State appealed and the petitioner asked Judge Tarnow to reconsider or clarify his order.

Judge Tarnow granted the petitioner's motion in part, finding that the court "erred in granting conditional habeas relief to petitioner and determine[d] that justice would be better served by issuing an unconditional writ of habeas corpus in this case. . . ." *Ward v. Wolfenbarger*, 340 F. Supp. 2d 773, 776 (E.D. Mich. 2004).  Judge Tarnow concluded that granting the petitioner a new direct appeal would not "vitiate the prejudice arising from the deprivation of his constitutional right to

-4-

appeal and to appellate counsel on his 1971 convictions." *Ibid.*  Judge Tarnow found that "these 1971 convictions are being used, in part, to deny petitioner parole on his 1981 conviction." *Id.* at 776.  He stated that the petitioner was "entitled to have these 1971 convictions and all of the effects stemming from them completely expunged from his record." *Id.* at 776-77.  Judge Tarnow ordered the Clerk of the Circuit Court for Huron County to expunge the conviction and to forward a copy of the order "to any person or agency that was notified of [the petitioner's] arrest or conviction involved with these offenses." *Id.* at 777.  There is no record whether the State's appeal was ever pursued or decided.

During that time period in 2003, the petitioner also filed a motion for resentencing on his 1981 cocaine case in the Washtenaw County circuit court, which was denied.  The Michigan appellate courts denied the petitioner leave to appeal.  *People v. Ward*, No. 252153 (Mich.Ct.App. Mar. 15, 2004); *People v. Ward*, 471 Mich. 899, 688 N.W.2d 89 (2004).

On September 28, 2004, the petitioner filed yet another habeas petition in this court, challenging his Washtenaw County sentencing on the ground that legislative changes required resentencing and that he was prejudiced by unspecified inaccuracies in his 1981 presentence report.  The petition was assigned to Judge Avern Cohn, who transferred the petition to the Sixth Circuit as a second or successive habeas petition.

In November 2004, while the petitioner's motion in the Huron County circuit court was pending, the Parole Board granted his parole.  However, the petitioner's parole was short-lived.  On July 15, 2005, he was re-arrested, and charged with accosting children for immoral purposes, indecent exposure, selling or furnishing alcohol to minors, and malicious destruction of a building, after he allegedly attended a hotel party involving teenagers, alcohol, and pornography.  The State

eventually dropped the criminal charges against him, but he remained in prison while the Parole Board considered the merits of several parole violation charges in connection with the incident, discussed below.

On November 22, 2005, the Sixth Circuit returned the habeas petition assigned to Judge Cohn to this court, finding that permission to file was not required. *In Re Ward*, No. 05-1479 (6th Cir. Nov. 22, 2005). On December 12, 2005, the petitioner filed an amended habeas petition and added a third claim concerning the state court's alleged delay in adjudicating a post-conviction motion, which he claimed to have filed with the state court in 1995. Judge Cohn denied the petition. *Ward v. Wolfenbarger*, No. 04-73725 (E.D. Mich. July 17, 2006).

Before the Parole Board could rule, in May 2006 the petitioner filed before Judge Tarnow an "Emergency Motion to Re-Open Case and Grant Immediate Habeas Corpus Release from Confinement," arguing that the State had failed to comply fully with the September 2004 order by allowing references to his 1971 drug convictions to remain in his parole file. In support of his motion, he attached documents including a "Basic Information Sheet" that referenced his 1971 convictions without any accompanying notation signifying their expungement. He submitted an updated Basic Information Sheet this week, dated September 15, 2011, which still has the 1971 convictions listed.

Meanwhile, the Parole Board went forward with the parole revocation process following the petitioner's Huron County arrest in the motel room incident. The parole incident report described the incident that led to the violations as follows:

> At 12:54 am on July 15, 2005, Bad Axe police Sgt. Michael Anderson and Officer Shawn Webber were dispatched to room 2031 of the Holiday Inn Express in Bad Axe in regards to some angry parents. At the room, the officers contacted Steve and Nancy Bambach and Tonya Ford and Doral Lawhorn. They advised that they were

looking for their children, Jacob Bambach, age 16 and Alicia Ford, age 14, and had tracked them down to this room. When they entered the room, they found an older male on the bed in the bedroom, naked, watching pornographic movies. This male was later identified as Parolee Ward. Three minor children, [J]acob Bambach, age 16, Justin Haag, age 15 and Alicia Ford, age 14, were also found in the room. Also found in the room was an opened bottle of Vodka and an empty pint of Pucker. Jacob [B]ambach told officers that Parolee Ward had told him that he was getting a room at the Holiday Inn Express and asked him if he and some friends wanted to come over. After Ward picked up the kids, they went to Save-A-Lot where Ward asked Bambach if he had ever had sex with a vegetable. Ward purchased two large cucumbers and when asked what they were for he told Bambach, "you'll see later". They then went to the East Side Party Store where Ward purchased alcohol. All three minors admitted consuming some of the alcohol. Alicia Ford told officers that Ward had offered her money if she would have sex with him. He also asked her to take a picture of Jacob Bambach's penis and to watch pornographic movies with him. She refused all requests. All three minors advised that at one point Ward appeared wearing only a shirt which left his penis visible. Bambach also stated that at one point he observed Ward playing with his genitals while viewing a pornographic movie. He also stated that at one point Ward was swinging a two headed dildo and asked them if they, "wanted to have some fun"? 38 pornographic movies were found in the room and some condoms were found on the bed. A bedroom window was found broken, Alicia Ford stated that Ward had done that in an effort to escape the room when their parents arrived unexpectedly.

Michigan Dep't of Corr. Parole Violation Report, June 22, 2008 at 3.

The petitioner was charged with ten separate parole violations and eight local criminal charges, including one felony charge. The criminal charges were dismissed on March 15, 2006 as part of an agreement between the Huron County prosecutor's office and the petitioner. For his part in the agreement, the petitioner testified in the Huron County circuit court in the trial against Stephen Cline, who was charged with numerous assaultive felonies. The petitioner and Cline had been cellmates at the Huron County jail and allegedly Cline made incriminating statements to the petitioner.

The parole revocation hearing was held on June 23, 2006, while the petitioner's motion was still pending before Judge Tarnow. The petitioner entered into a plea agreement with the State in

which he agreed to waive the appearance of the parole agent and any procedural arguments, and he agreed to plead no contest to three of the ten parole violation counts. In exchange for his no-contest plea, an 18-month continuation of his custody sentence would be recommended and the remaining violations would be dismissed. The agreement stated that the recommendation was "not binding" on the Parole Board and that "[t]he final decision of the Parole Board may *exceed* the recommendation." Parole Violation Formal Hr'g Summary and Recommendation, June 29, 2006 at 1. The petitioner pleaded no contest to the following:

> Count 2: Violation of Condition No. 4 – Conduct
> On or about July 15, 2005, you were involved in behavior which constitutes a violation of Michigan State Law in that you did knowingly appear before Jacob Michael Bambach, age sixteen (16), wearing only a shirt and exposing your penis to view in a room at the Holiday Inn Express in Bad Axe, Michigan.
>
> Count 3: Violation of Condition No. 4 – Conduct
> On or about July 15, 2005, you were involved in behavior which constitutes a violation of Michigan State Law in that you did knowingly appear before Justin Haag, age fifteen (15), wearing only a shirt and exposing your penis to view in a room at the Holiday Inn Express in Bad Axe, Michigan.
>
> Count 4: Violation of Condition No. 4 – Conduct
> On or about July 15, 2005, you were involved in behavior which constitutes a violation of Michigan State Law in that you did knowingly appear before Alicia Ford, age fourteen (14), wearing only a shirt and exposing your penis to view in a room at the Holiday Inn Express in Bad Axe, Michigan.

Michigan Dep't of Corr. Parole Violation Formal Hr'g Summary and Rec., June 29, 2006 at 1.

The petitioner's plea agreement was placed on the record and he confirmed that he understood the plea. The petitioner pleaded no contest to the three counts and the hearing officer found sufficient evidence to accept the pleas and dismissed the other counts. The petitioner then presented mitigation evidence by calling a Huron County prosecutor to testify about the assistance that he gave in testifying for the prosecution in the Cline case. The petitioner did not know, at the

-8-

time that he testified for the prosecution in the Cline case, whether all the criminal charges or just some of the charges against him were going to be dismissed.

On June 29, 2006, the hearing officer issued a summary and recommendation report. The hearing officer concluded that the petitioner's "adjustment while on parole has been very poor." Parole Violation Formal Hr'g Summary and Rec., June 29, 2006 at 1. The officer recommended a return to prison and an 18-month continuation of the petitioner's incarceration. The formal decision revoking the petitioner's parole was filed on July 7, 2006, and his incarceration continued for eighteen months, which resulted in a reconsideration of his parole eligibility in September 2007.

The petitioner filed a timely request for judicial review of his parole revocation in the Ingham County circuit court. In September 2006, the circuit court rejected his filings under Michigan Compiled Laws section 600.2963(8), noting that the petitioner owed the court $679.12 in outstanding fees and costs in seven closed cases. The circuit court, Michigan Court of Appeals, and Michigan Supreme Court also determined that the materials the petitioner had mailed to them were not properly filed. The petitioner did not at any time file a formal appeal in either the court of appeals or supreme court.

The petitioner then moved for summary judgment on his motion to reopen his habeas case before Judge Tarnow. Judge Tarnow ordered the State to show cause "why the State of Michigan has failed to fully comply with the Court's order directing the expungement of 1971 convictions for Possession of LSD and Possession of Marijuana from [the petitioner's] records." *Ward v. Wolfenbarger*, No. 03-72701 (E.D. Mich. Feb. 13, 2007). After the State responded, the district court denied both the petitioner's motion to reopen his habeas case, *Ward v. Wolfenbarger*, No. 03-72701, 2007 WL 1009729 (E.D. Mich. Mar. 29, 2007), and his later motion for reconsideration,

-9-

*Ward v. Wolfenbarger*, No. 03-72701/7258 (E.D. Mich. Oct. 23, 2007). Judge Tarnow based his

ruling on the State's representation that Huron County had expunged the record as ordered, and

"[t]he only documents related to petitioner's 1971 convictions are maintained in an expungement

file which are kept by the M.D.O.C. to monitor the M.D.O.C.'s compliance with the Court's order.

The various prisons and the Michigan Parole Board do not have access to this file." *Ward*, 2007 WL

1009729, at *2. The Sixth Circuit affirmed. *Ward v. Wolfenbarger*, 342 F. App'x 134 (6th Cir.

Aug.17, 2009). On January 25, 2010, the Supreme Court denied the petitioner's petition for writ

of certiorari. *Ward v. Wolfenbarger*, --- U.S. ---, 130 S. Ct. 1291 (2010).

Meanwhile, the petitioner also had filed an appeal from the Parole Board's decision in the

Huron County circuit court, which was denied. *Ward v. Michigan Dep't of Corr.* No. 06-3271-AP

(Huron County Circuit Court, May 31, 2007). The state court of appeals dismissed his claim of

appeal:

> for failure to pursue the case in conformity with this Court's order in docket number
> 239189. That order prevents plaintiff from filing this case until he pays the
> remainder of the filing fee in docket number 239189. Plaintiff has not paid the
> remaining fee.

*Ward v. Dep't of Corr.*, No. 278539 (Mich. Ct. App. June 21, 2007). The record does not indicate

whether the petitioner filed an appeal from that decision in the Michigan Supreme Court.

On January 2, 2008, the Parole Board issued a notice of decision that "the majority of the

Parole Board has no interest in taking action at this time." The petitioner's next review will be on

September 13, 2012.

In July 2008, the petitioner filed this habeas petition, raising the following claims:

I.     Michigan Compiled Laws § 600.2963(8), on its face, violates the United
       States and Michigan Constitutions.

-10-

II.     As a parolable "lifer," the petitioner challenges the Parole Board's practices, procedures, statutes, administrative rules, and policy directives because they violate his due process and equal protection rights.

III.    The parole authorities lacked jurisdiction and were barred by estoppel to initiate parole violation proceedings, to proceed to a hearing, to take his no-contest plea, to revoke parole, and to continue his incarceration.

IV.     The parole authorities lacked jurisdiction because there was insufficient evidence for his no-contest plea and to revoke his parole on the three counts of violation.

V.      The parole authorities lacked jurisdiction to prosecute or take his no-contest plea where they failed to articulate sufficient factual allegations to state an offense.

VI.     The petitioner was denied due process because he was not given adequate notice of the parole violation charges.

VII.    The parole authorities lost jurisdiction over the petitioner's case when a state official forged the petitioner's signature waiving his right to a probable cause preliminary hearing, making the waiver invalid.

VIII.   The Parole Board breached the plea agreement.

IX.     The Parole Board continues to violate Judge Tarnow's order requiring expungement of the two 1971 convictions from his record.

X.      The Parole Board is shirking its responsibilities.

XI.     The petitioner was denied his due process rights to confront and cross-examine his accusers.

XII.    The petitioner was denied due process when his motions, pleadings, and requests were denied.

XIII.   The petitioner's plea was taken in violation of the court's rules.

XIV.    The petitioner's plea was illusory.

XV.     The petitioner's parole violation hearing was tainted and infected by personal animus against the petitioner.

-11-

XVI.    The petitioner was denied due process because the parole authorities denied him credit for time served in the county jail.

XVII.   The petitioner's parole violation counsel was ineffective.

XVIII.  The state court committed plain error when it summarily dismissed his petition.

XIX.    The circuit court committed plain error in holding that the petitioner was not entitled to judicial review of the Parole Board's decision.

XX.     The Huron County circuit court judge should be disqualified.

On January 23, 2009, the respondent filed an answer in opposition to the petition.

## II.

As an initial matter, the Court must address the various statutes invoked by the petitioner as bases for relief. The petitioner seeks to invoke the Court's jurisdiction under the general habeas empowerment statute, 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, the All Writs Act, 28 U.S.C. § 1651, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, in addition to the statute governing habeas writs in favor of state prisoners, 28 U.S.C. § 2254. It appears that the petitioner believes that invoking the Court's jurisdiction under those sections would permit the petitioner to avoid the exhaustion and deferential review requirements of the AEDPA.

First, section 2241 authorizes a district court to grant a writ of habeas corpus if a petitioner establishes that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although the Sixth Circuit has suggested that there is a "serious question whether a state prisoner *may* proceed under § 2241," *Allen v. White*, 185 F.App'x 487, 490 (6th Cir. 2006), published decisions have permitted state prisoners to proceed under section 2241. *See Greene v. Tenn. Dep't of Corr.*, 265 F.3d 369, 371-72 (6th Cir. 2001). But that does not help the petitioner here. The exhaustion requirement of section 2254 applies to 2241 petitions

-12-

challenging the execution of a sentence, even though that statute does not mandate exhaustion by its own terms. *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 237 (6th Cir. 2006). And when a petitioner challenges his "custody pursuant to a state court judgment," then the standards established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (effective April 24, 1996), apply, regardless of how the petitioner characterizes his petition. *Rittenberry v. Morgan*, 468 F.3d 331, 333 (6th Cir. 2006); *see also Bies v. Bagley*, 519 F.3d 324, 330 n.3 (6th Cir. 2008), *rev'd on other grounds sub nom Bobby v. Bies*, 129 S. Ct. 2145 (2009) (noting that § 2241 has a "less restrictive" standard than § 2254, but the latter standard applies to state prisoners regardless).

Second, 28 U.S.C. § 1651, the "All Writs Act," may not be used to evade the strictures of section 2254. *See Brennan v. Wall*, 100 F. App'x 4 (1st Cir. 2004); *see also Haliburton v. United States*, 59 F. App'x 55, 57 (6th Cir. 2003) (federal prisoner could not use the All Writs Act to circumvent the AEDPA's prohibition against the filing of a second or successive motion to vacate sentence brought under 28 U.S.C. § 2255. Further, the All Writs Act is not an independent source of federal jurisdiction to issue writs, but only authorizes federal courts to issue writs in aid of their jurisdiction. *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011) (citing *United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004). Reference to the All Writs Act in this case is a redundancy, since the Court already has the authority to issue a writ of habeas corpus, provided the proper showing under 28 U.S.C. § 2254 has been made.

Third, the petitioner's reliance upon the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, is also misplaced, because it is not an independent source of federal jurisdiction, either. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Declaratory relief is not available in federal court

to attack a state criminal conviction and cannot be used as a substitute for an appeal or a petition for writ of habeas corpus. *Ruip v. Commonwealth of Ky.*, 400 F.2d 871, 872 (6th Cir. 1968) (quoting *Forsythe v. State of Ohio*, 333 F.2d 678, 679 (6th Cir. 1964)). A party may invoke the Declaratory Judgment Act only if the court already has jurisdiction. *See Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003).

The petitioner's attempt to invoke the Court's jurisdiction under 42 U.S.C. § 1983 raises an issue that has been the subject of debate in the circuits. There is a potential overlap of authority between section 1983 and section 2254 when a prisoner challenges the procedures for awarding discretionary parole, where the outcome may result in a new parole hearing but not necessarily a shorter sentence. In *Terrell v. United States*, 564 F.3d 442 (6th Cir. 2009), the court explained:

> The [Supreme] Court in [three cases] held that a challenge, respectively, of a prisoner's underlying conviction or sentence, that necessarily demonstrated the invalidity of the confinement's legality, or that would result in the restoration of good-time credits which necessarily shortens the duration of confinement, can only be brought under habeas. In [two other cases], the Court held that challenges by state prisoners to procedures that would only lead to new proceedings, discretionary and not necessarily spelling immediate release or a shorter duration of confinement, may be brought under § 1983.

*Id.* at 446 (internal citations omitted). The Sixth Circuit ultimately determined that "the action [challenging parole procedures that would not necessarily result in a sentence reduction] can both be brought under habeas and the equivalent civil action." *Id.* at 448. Therefore, the petitioner's claims in this case can be entertained under both sections 2254 and 1983. However, there is no authority suggesting that where a prisoner's ultimate form of relief is release from custody or s shorter period of confinement, he may escape the requirements of section 2254.

The Court finds, therefore, that although the petitioner may proceed under both sections, AEDPA's provisions still must govern this case.

-14-

Under AEDPA, a federal court may issue a writ of habeas corpus only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

-15-

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id.* at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter,* --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

AEDPA prohibits federal courts from issuing habeas writs in favor of state prisoners unless the prisoner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The respondent argues that the petitioner did not properly exhaust his claims in the Michigan appellate courts. However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Moreover, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily

-16-

resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix,* 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of the petitioner's claims.

III.

The Court will address the merits of the petitioner's claims.

A.

In claim one of his petition, the petitioner alleges that Michigan Compiled Laws § 600.2963(8), which prevents prisoners with outstanding litigation fees and costs from filing new lawsuits until such fees and costs have been paid, is unconstitutional on its face and violates the United States and Michigan Constitutions. However, that same claim was raised by the petitioner and adjudicated in a habeas action filed in the Western District of Michigan, which was summarily dismissed on January 19, 2007. *Ward v. Howes*, No. 06-CV-127, 2007 WL 172515 (W.D. Mich. Jan. 19, 2007) (Quist, J.). In addressing that issue, Judge Quist adopted the report of a magistrate judge, who wrote:

> Petitioner wrote a number of letters to officials at the Ingham County Circuit Court, the Michigan Court of Appeals, and the Michigan Supreme Court, requesting that his outstanding court fees be waived so that he could appeal his parole revocation. In this correspondence, Petitioner alleged that Mich. Comp. Laws § 600.2963(8) was unconstitutional on its face and as applied to him. In response, the Ingham County Circuit Court declined to waive Petitioner's outstanding fees and costs; the circuit court, Michigan Court of Appeals, and Supreme Court noted that the materials Petitioner had mailed to them were not proper methods of litigating or appealing the matter. Petitioner did not at any time file a formal appeal with either the state court of appeals or supreme court.

> In his pro se application for habeas relief, Petitioner asserts that Mich. Comp. Laws § 600.2963(8) is unconstitutional on its face "and/or" as applied to Petitioner. He argues that the provision is improperly denying him access to the courts, depriving him of due process, and denying him equal protection of the laws. For relief, Petitioner requests appointment of counsel; an evidentiary hearing; a declaration that

-17-

Mich. Comp. Laws § 600.2963(8) is both unconstitutional on its face and unconstitutional as applied to Petitioner; and discharge from confinement.

* * *

A federal habeas court may not review an alleged error in a state collateral proceeding where the error alleged has nothing to do with the petitioner's confinement. A petitioner's constitutional challenge of Mich. Comp. Laws § 600.2963(8) is an attack on proceedings that are collateral to the petitioner's detention, and is not an attack against his detention as is required by 28 U.S.C. § 2254(a). In the present case, Petitioner is therefore not entitled to habeas review of his constitutional challenge of § 600.2963(8) because the claim would not undermine his parole revocation. Because Petitioner's constitutional challenge to Mich. Comp. Laws § 600.2963(8), if successful, would not lead to reinstatement of his parole and release from custody, it is not cognizable under 28 U.S.C. § 2254.

*Id.* at *4 (internal citations and footnotes omitted).

It appears that the petitioner has challenged the constitutionality of section 600.2963(8) as a means of excusing his failure to exhaust his revocation-of-parole claims through all levels of the state court system. He argues that the statute is unconstitutional on its face, but he does not seek any specific relief in this challenge. The relief he seeks in his petition is "an unconditional writ of habeas corpus," or alternatively, "a conditional writ." Pet. at 58. To the extent that the claimed unconstitutionality of the statute advances that goal, the claim is predicated on the same challenge that was raised in a previous habeas petition. Therefore, the claim is barred from review under 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."); *see also In re Salem*, 631 F.3d 809, 812 (6th Cir. 2011) (claims raised in previous habeas petition and barred under § 2244(b)(1) will be dismissed).

B.

-18-

The petitioner's core complaint in this case is focused on the Parole Board's July 2006 decision to revoke his parole and continue his incarceration. The petitioner brings a host of challenges to the revocation proceedings. In claims two through seven, the petitioner alleges that the Parole Board lacked jurisdiction to: proceed to a hearing, give notice of the public hearing, take his no-contest plea, revoke parole, continue his incarceration, and conduct a preliminary hearing because he did not waive his rights. In claims eight through ten, he alleges that the Parole Board breached an agreement, is continuing to violate Judge Tarnow's order, and is shirking its responsibilities. In claims eleven and twelve, he asserts that his due process rights were violated when he was denied the right to confront the witnesses and when his various motions were denied. In claims fifteen and sixteen, he alleges that the parole hearing was tainted, the hearing officer was biased, and the Parole Board failed to give him credit for time served in the county jail.

The Supreme Court has held that "the conditional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards." *Moody v. Daggett,* 429 U.S. 78, 85 (1976) (citing *Morrissey v. Brewer,* 408 U.S. 471 (1972)). This liberty interest comes into existence once the inmate actually has been released on parole. The Supreme Court first recognized a protected liberty interest in continued enjoyment of parole release status in *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972). In that case, the Court delineated the "minimum requirements of due process" for parole revocation procedures. *Morrissey,* 408 U.S. at 489. A parole revocation procedure must include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing

-19-

confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Ibid.*

The petitioner was afforded all these procedural safeguards in the 2006 revocation proceedings. The record demonstrates that the petitioner was provided with a notice of parole violation charges and with a notice of his rights to a preliminary hearing. He waived his rights to a preliminary hearing and was arraigned on the parole violation charges. The petitioner acknowledged his parole revocation hearing rights. An attorney was appointed for him and he was notified of the hearing dates. He also was presented a plea offer. He later retained an attorney. At his hearing, he accepted the plea offer and pleaded no contest to three parole violation charges involving indecent exposure to a minor. The hearing officer accepted his pleas after hearing a summary of the evidence substantiating the charges, and he allowed him to present mitigating information by calling a witness. The State disclosed to the petitioner the evidence against him and provided the opportunity to be heard in person and to present witnesses and documentary evidence, and the opportunity to confront and cross-examine adverse witnesses. The hearing officer prepared a lengthy summary and recommendation. In that report, the hearing officer stated:

Finding of fact/Conclusion of Law:

The parolee's pleas of no contest together with the narrative of the violation in the parole violation report regarding counts 2, 3, and 4 provided a sufficient factual basis for the Hearing Examiner to find, by a preponderance of the evidence, the parolee is IN VIOLATION of those three counts. The remaining counts are dismissed per the plea agreement in this case.

Michigan Dep't of Corr. Parole Board Notice of Action, July 7, 2006 at 3.

-20-

The Court finds that the petitioner has failed to establish that the Parole Board's decision to revoke his parole was in any way improper or based on insufficient information, as the petitioner alleges.  The due process requirements of *Morrissey* were satisfied, the determination of the Parole Board was based on its acceptance of the petitioner's no contest plea, and the record demonstrates that the petitioner's attorney agreed that this plea was supported by a sufficient factual basis. Michigan Dep't of Corr. Parole Board Notice of Action, July 7, 2006 at 2.  The fact that the criminal charges against the petitioner were dropped does not, as the petitioner appears to believe, indicate that the prosecutor determined that there was no probable cause to charge the petitioner.  The prosecutor involved in the case indicated that the prosecutor's office balanced many factors in determining whether to prosecute the petitioner, including the petitioner's cooperation in an unrelated case and the time the petitioner had already spent in jail as a result of his parole violation. *Id.* at 4.  Nor is the petitioner's assertion that he did not violate state law sufficient to demonstrate that the Parole Board's acceptance of his no contest plea was unsupported by sufficient evidence.

The petitioner also has failed to show that he has been treated unfairly or arbitrarily, or that the Parole Board abused its discretion in revoking his parole.  The claim that the hearing officer was biased is not supported by the record.  Of course, a fundamental requirement of the Due Process Clause is that a decision maker be impartial and unbiased.  *Marshall v. Jerrico, Inc.*, 466 U.S. 238, 242-43 (1980).  In *Morrissey* , the Supreme Court required that the hearing body be "neutral and detached," but a parole board "need not be judicial officers or lawyers."  *Morrissey*, 408 U.S. at 489.

An individual alleging bias against an administrative tribunal or policy makers vested with decision-making powers must "overcome the presumption of honesty and integrity in policymakers with decisionmaking power."  *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Assn.*, 426 U.S.

482, 497 (1976). That presumption of impartiality can only be overcome with "convincing evidence that 'a risk of actual bias or prejudgment' is present." *Navistar Intern Transp. Corp. v. USEPA*, 941 F.2d 1339, 1360 (6th Cir. 1991) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). An allegation that the decision maker is prejudiced "cannot be based on speculation or inference." *Ibid.*

"[T]he cases in which a bias has been found to exist, in violation of due process, involve one of two characteristics: either the decisionmakers derived a direct, pecuniary interest from decisions adverse to claimants or the decisionmaker was engaged in both adjudicative and executive functions in violation of the principle of separation of powers." *Hammond v. Baldwin,* 866 F.2d 172, 177 (6th Cir. 1989) (citations omitted). The decision maker in this case was not engaged in both adjudicative and executive functions. His duties were adjudicative. The issue, therefore, is whether "the decisionmaker[] derived a direct, pecuniary interest from decisions adverse to [the petitioner]." *Ibid.*

The petitioner has not set forth any evidence that would tend to show that the hearing officer had any pecuniary interest in revoking his parole. And although the petitioner alleges that the hearing officer's decision was motivated by personal animus, he has presented no evidence of this supposed animus. Rather, the hearing officer's findings are supported by the record and thoroughly substantiated. The fact that the petitioner disagrees with the hearing officer's decision and believes it to be incorrect does not establish that the hearing officer was biased toward him.

The petitioner also has failed to show that a state official "forged" his signature on the form waiving his rights to a probable cause preliminary parole violation hearing form. No evidence of forgery beyond the petitioner's bare assertions has been presented. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

-22-

The petitioner cannot establish that the Michigan Department of Corrections and the Michigan Parole Board lacked jurisdiction over him. Michigan law conferred jurisdiction over the petitioner after he served 17-1/2 years of his life sentence. Mich. Comp. Laws § 791.234(13). The term of parole must be at least 48 months. *Id.* § 791.234(8)(d). "After a prisoner is released on parole, [and until he is discharged from parole,] the prisoner's parole order is subject to revocation at the discretion of the parole board for cause as provided in this section." *Id.* § 791.240a(1). Because the petitioner did not receive an order discharging him from parole, and he did not successfully complete parole, the Michigan Department of Corrections never lost jurisdiction over him. The Parole Board, therefore, was empowered to revoke his parole following his parole revocation hearing. *Ibid.* Any claim that the Department of Corrections lacked jurisdiction to proceed on parole violation charges because the criminal charges were dismissed is without merit for reasons set forth by the hearing officer in his report.

Once the determination is made that the procedures afforded the petitioner satisfied the Due Process Clause, the petitioner's challenge to the Parole Board's practices, procedures, statutes, administrative rules, and policy directives, and his contention that the Parole Board has shirked its duties, are easily dispatched. "[F]ederal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A state's failure "to follow its own policies and procedures does not amount to a constitutional violation." *Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005). In conducting habeas review, a federal court is limited to deciding whether the prisoner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3) and 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Although the petitioner contends that the Michigan Parole Board has violated its own rules, "[a] federal court may

-23-

not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Therefore, the claims that the Parole Board violated state law are not cognizable on habeas review. *See Kissane v. Jones*, 89 F. App'x. 577, 578 (6th Cir. 2004).

The petitioner's claim that he was denied credit for time served in the Huron County jail also is a matter of state law not cognizable on federal habeas review. *Estelle*, 502 U.S. at 68; *Pulley*, 465 U.S. at 41. Even if this claim were cognizable, the Huron County Circuit Court judge's opinion and order dated May 31, 2007, which the petitioner attaches to his petition, indicates that he was not entitled to such credit. *Ward*, No. 06-3271-AP, at *2. That decision is not subject to review by this Court.

The petitioner relies on *Foster-Bey v. Rubitschun*, No. 05-71318, 2008 WL 7020690 (E.D. Mich. Oct. 23, 2008), to challenge the Parole Board's practices and procedures. In that case, the district court found that changes in Michigan's parole procedures violated the *Ex Post Facto* Clause as to parolable lifers in the Michigan prison system. The Sixth Circuit reversed that decision, however, stating:

> To the extent that plaintiffs face a risk of increased punishment under the post 1992 parole laws as compared to the laws in effect when they committed their offenses, we cannot conclude that changes to the parole laws caused such an increase. Rather, the new Board's low rates of parole may be attributable largely to the legitimate exercise of discretion in granting fewer paroles. Even assuming that changes in the number of paroles did not result from a stricter exercise of discretion, it is not clear that plaintiffs have shown a sufficient risk of increased punishment to prevail on their ex post facto claim. Thus plaintiffs were not entitled to judgment as a matter of law, and the summary judgment and grant of injunctive relief must be reversed.

*Foster v. Booker*, 595 F.3d 353, 355-56 (6th Cir. 2010). The petitioner is therefore not entitled to relief based on the Parole Board's policies or any changes thereto.

C.

-24-

In claims thirteen and fourteen, the petitioner argues that the Parole Board breached the plea agreement in a variety of ways. He alleges that his entire record was sent to the Parole Board over his objections. The file contained a letter that the petitioner had written to the parents of the three teenagers involved in the hotel room incident that led to the revocation of his parole, explaining the circumstances of the incident. He claims that the prosecutor took the position that the letter implied that he was attempting to bribe the parents into not testifying. It was the petitioner's understanding that the letter would not be sent to the Parole Board. He also claims that, had he known he would be put to the "hurdles and rigors" of a public hearing, he would not have pleaded no contest. He states that a public hearing was not part of the plea agreement. He also states that it was his belief that the plea agreement stated that he would be released on parole after 18 months, and that he would be placed in a reentry program.

Nothing in the record substantiates the petitioner's arguments that any of these features were part of the promises made by the State. The agreement called for a no contest plea to three parole violations while the petitioner was on parole for his drug conviction. The Office of Field Programs promised to dismiss the seven other charges and recommend an 18-month continuation of custody. The record plainly demonstrates that the recommendation was not a guarantee. There was no promise that the petitioner would be re-paroled following his revocation, nor that he would be placed in a reentry program. Any subjective belief that the petitioner may have had otherwise is belied by the record. Nor did the Office make any promise not to send his record to the Parole Board or that there would be no public hearing. The petitioner's claim that the plea agreement was breached has no merit, and the Court will deny the petition on these grounds.

D.

-25-

In his ninth habeas claim, the petitioner alleges that the Parole Board continues to rely on the two 1971 expunged convictions when deciding to take "no interest" in taking action in his case. That same concern was raised in the proceedings before Judge Tarnow, who granted an unconditional writ of habeas corpus on those convictions and ordered them expunged. Judge Tarnow denied the petitioner's later motion for relief when the record of the convictions turned up in the MDOC papers because of the State's assurance that the file was sequestered and was not available to the Parole Board. Judge Tarnow also reasoned that because the Parole Board had granted the petitioner parole, the 1971 convictions could not have disadvantaged him. But the State's sloppy record-keeping did not go unnoticed. In the court of appeals, Judge Sutton remarked in an opinion concurring in the denial of relief to the petitioner:

> I write separately merely to note that the Michigan Department of Corrections could have saved itself a lot of trouble by eliminating those references in the first place or perhaps by developing a better procedure for ensuring such references are removed. . . . Ward's suit is not frivolous. He lost on the merits not because he and his attorneys failed to show problems with the Department's expungement of his conviction but because he has not shown that its mistakes harmed his case before the parole board. With a different prisoner and a different fact pattern, stray references to an expunged conviction might well affect a parole case in a cognizable way.

*Ward v. Wolfenbarger*, 342 F. App'x 134, 138 (6th Cir. 2009) (Sutton, J., concurring).

The court of appeals affirmed Judge Tarnow's denial of relief because, like Judge Tarnow, it found that "Ward offered 'nothing other than speculation' that the Parole Board was taking into account the vacated 1971 convictions in a way that would prejudice his shot at parole," and that there was "no evidence of any adverse consequences, direct or collateral, as a result of the persistent notation of the 1971 convictions on certain forms." *Id.* at 137.

The Parole Board issued its "no interest" letter in September 2008, before the court of appeals issued its decision in *Ward v. Wolfenbarger*. Therefore, the record of the petitioner's

-26-

experiences before the Parole Board remains the same as it was then.  Despite the nettlesome conduct by the MDOC, its continued failure to delete reference to the 1971 convictions, and the State's apparent misrepresentation to Judge Tarnow of the status of those files, there is still no evidence  "that its mistakes harmed [the petitioner's] case before the parole board."  *Id.* at 138.

The other obstacle faced by the petitioner concerning his complaint that the Parole Board has not re-admitted him to parole is that has no constitutional right to be released on parole.  There is no constitutional right of a lawfully convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Thus, there is no federal constitutional right to parole under the Michigan parole system because the decision to release a prisoner on parole is largely discretionary.  *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994); *Gavin v. Wells*, 914 F.2d 97, 98 (6th Cir. 1990).  Although the Michigan parole statutes were amended in 1996 to limit the Parole Board's discretion to deny parole to a prisoner classified as having a "high probability of parole," Mich. Comp. Laws § 791.233e(6) (2011), the Sixth Circuit just last week held "that Michigan's 1996 amendments did not affect the holding in *Sweeton*.  There is no 'legitimate claim of entitlement to' parole, and thus no liberty interest in parole." *Crump v. Lafler*, --- F.3d ---, 2011 WL 4359901 at *9 (6th Cir. Sept. 20, 2011) (citations omitted).

The Court, therefore, must deny the petitioner's claim that the State's continuing violation of Judge Tarnow's prior orders entitles the petitioner to habeas relief.

### E.

In his seventeenth habeas claim, the petitioner asserts twenty-three claims against the lawyer who represented him at the parole violation hearing, including the failure to investigate, properly

-27-

advise him, call and present relevant and material witnesses, file appropriate motions, and advise the administrative law examiner that the officer's report was inaccurate. The petitioner also alleges that counsel "promised him" that the prosecutor agreed that if he pleaded no contest to counts two through four, "he would be guaranteed [] to parole no later than [September 13, 2007]." Pet.'s Br. at 51.

In *Gagnon v. Scarpelli,* 411 U.S. 778 (1973), the Court concluded that the decision whether to appoint counsel to an indigent parolee at a revocation proceeding must be made on a case-by-case basis. *Id.* at 790. The Court noted that "considerable discretion must be allowed the responsible agency in making the decision." *Ibid.* The decision maker must consider whether the issues to be presented by the parolee at the hearing are "complex or otherwise difficult to develop or present," and whether the parolee "appears to be capable of speaking effectively for himself." *Id.* at 790-91.

The petitioner was assigned counsel for his parole revocation hearing. He later retained counsel. The Court finds that he has failed to meet his high burden of showing that his attorney was constitutionally ineffective under both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a criminal defendant is deprived of the effective assistance of counsel guaranteed by the Sixth Amendment only if counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and counsel's deficient performance prejudiced him, *ibid*.

The petitioner in this case cannot establish that counsel's performance was deficient. He has not shown that counsel failed to conduct a reasonable investigation. His assertions that unproduced witnesses would have provided exculpatory information is conclusory and unsupported by the record

before this Court.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See Workman*, 178 F.3d at 771.

The petitioner also cannot establish that he was prejudiced by his lawyer's performance.  The record reveals that counsel was present at the revocation hearing and that the necessary documents establishing that the petitioner committed the charged parole violations were produced.  The petitioner has not shown that the admission of additional evidence would have affected the outcome of the hearing.  This Court is not convinced that counsel's alleged errors undermined the reliability of the proceedings.  The petitioner is therefore not entitled to habeas relief with respect to this claim.

### F.

In claims eighteen and nineteen, the petitioner asserts that the state judge committed plain error when it summarily dismissed his petition for judicial review of the Parole Board's decisions that it had no interest in taking action toward considering the petitioner for parole in 2007 and 2008 on the ground that the petitioner was not entitled to judicial review of the Parole Board's decision. Michigan law  establishes that only the Parole Board's ultimate decision to grant or deny parole is subject to appeal.  *In re Parole of Johnson*, 235 Mich. App. 21, 25, 596 N.W.2d 202, 204 (1999). Decisions of "no interest" are not reviewable.  *Gilmore v. Parole Bd.*, 247 Mich. App. 205, 207, 635 N.W.2d 345, 347 (2001).  Even if the state judge misapplied these principles, the error at most would be one of state law that is not reviewable by a federal court on habeas.  *Lewis,* 497 U.S. at 780.

### G.

In his twentieth claim, the petitioner asserts that the judge issuing the decision summarily dismissing the petition should have been disqualified.  After the Huron County Circuit Judge M.

-29-

Richard Knoblock denied his appeal from the Parole Board's decision, the petitioner moved to disqualify him. The petitioner asserted that Judge Knoblock was actually biased against him because the petitioner had sued associates of the Judge in federal court and had filed grievances against him. Judge Knoblock denied the motion. *People v. Ward*, No. 07-3625-AP & 07-3624-AV (Huron County Circuit Court, Oct. 23, 2007). That decision was subsequently affirmed by a second judge. *Ward v. Michigan Parole Board*, No. 07-3625-AP & 07-3624-AV (Huron County Circuit Court, Jan. 29, 2008). The petitioner now seeks habeas relief on the ground that Judge Knoblock exhibited actual bias against him thereby violating his rights.

Although "it certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case," *Tumey v. Ohio,* 273 U.S. 510, 523 (1927), no such showing has been made here. The petitioner has not even suggested that Judge Knoblock had a pecuniary bias against him, stating instead that Judge Knoblock was "feuding" with the petitioner's brother-in-law and that the petitioner had brought suit against various law enforcement officials that the petitioner contends are personal and business associates of the judge. The petitioner has not substantiated these assertions, nor has he identified any behavior or comments by the trial judge that even hint at the possibility that Judge Knoblock was biased or prejudiced against the petitioner. Therefore, the claim does not support habeas relief.

IV.

The petitioner has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

-30-

Accordingly, it is **ORDERED** that the petitioner's request for leave to supplement the record

[dkt. #63] is **GRANTED**.

It is further **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 29, 2011

<table>
<tr><td>

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on September 29, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

</td></tr>
</table>